ELLEN F. ROSENBLUM
Attorney General
PEENESH H.  SHAH  #112131
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 378-4402
Fax: (503) 378-6306
Email:  Peenesh.H.Shah@doj.state.or.us

Attorneys for Oregon Department of Environmental Quality

BOB FERGUSON
Washington State Attorney General
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
Telephone: (360) 753-6200

Attorney for Washington Department of Ecology


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| DESCHUTES RIVER ALLIANCE, an Oregon nonprofit corporation,<br><br>       Plaintiff,<br><br>    v.<br><br>PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation,<br><br>       Defendant. | Case No.  3:16-cv-01644-SI<br><br>BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS |


Amici Oregon Department of Environmental Quality and Washington Department of

Ecology file this amicus brief for the sole purpose of articulating their view of their authority

under Section 401 of the federal Clean Water Act.  Amici do not take any position on the

substance of plaintiffs' claims in this case.  The interest of amici is to preserve its authority to protect water quality as expressly provided in the federal Clean Water Act citizen suit provision.

In its motion to dismiss, Portland General Electric (PGE) contends that a state does not have the authority under the federal Clean Water Act to enforce the conditions of a certification it has issued under Section 401 of that act, codified at 33 U.S.C. § 1341.  (PGE Motion at 14–16).  Amici do not agree with that legal proposition.  Amici are the regulatory bodies charged with implementing the federal Clean Water Act in their respective states, including certifying whether activities authorized by certain federal approvals comply with federally-approved state water quality standards under Section 401 and, when necessary, conditioning such certifications to assure compliance.  As a necessary part of that framework, the federal Clean Water Act includes a mechanism for states to enforce those certification conditions—namely, 33 U.S.C. § 1365's citizen-suit provision.

## A.      Individual states have a central role in implementing the federal Clean Water Act.

The federal Clean Water Act implements "a partnership between the States and the Federal Government, animated by a shared objective:  'to restore and maintain the chemical, physical, and biological integrity of the Nation's waters.'"  *Arkansas v. Oklahoma*, 503 U.S. 91, 101, 112 S. Ct. 1046 (1992) (quoting 33 U.S.C. § 1251(a), or Section 101 of the Clean Water Act).  Within the framework of cooperative federalism created by Congress, individual states have the "primary responsibilities and rights" to "prevent, reduce, and eliminate pollution," as well as to "plan the development and use (including restoration, preservation, and enhancement) of land and water resources."  33 U.S.C § 1251(b).

Consistent with the federal Clean Water Act's purpose and framework, individual states play a role that includes the promulgation of water quality standards that establish the "desired condition of a waterway."  *Arkansas*, 503 U.S. at 101 (citing 33 U.S.C. § 1313, or Section 303 of the federal Clean Water Act).  The "achievement of [those] water quality standards" is "one of the Act's central objectives."  *Arkansas*, 503 U.S. at 106.  The objectives of the federal Clean

Page 2 -      BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON
          DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS
          SPH/rh2/7938353-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306

Water Act "to restore *and maintain* the chemical, physical, and biological integrity of the Nation's waters," 33 U.S.C. § 1251(a) (emphasis added), would be severely undermined if the Act were interpreted to preclude a state from enforcing compliance with the conditions it imposes to ensure compliance with water quality standards.

**B.**     **States ensure that federally approved projects will meet state water quality standards through the imposition and enforcement of conditions in Section 401 certifications.**

In addition to preserving the rights of individual states to *create* water quality standards, the federal Clean Water Act also provides states with the means to *enforce* those standards. Among the principal enforcement tools is a requirement of state approval, or "certification," before the federal government will issue any permit for "any activity" that "may result in any discharge into the navigable waters."  33 U.S.C. § 1341 (codifying Section 401 of the Clean Water Act, and providing that "[n]o license or permit shall be granted until the certification required by this section has been obtained or has been waived").

Contrary to PGE's suggestion, Congress did not intend in the federal Clean Water Act for states to go through an empty exercise of imposing conditions on a water quality certification without authority to enforce those conditions.  In effect, PGE is arguing that state certifications serve as nothing more than statements of idle aspiration.  That view is contrary to the structure of the Act, which preserves a central role for states—giving them the responsibility and right to maintain water quality under federal law.

Rather, the Clean Water Act contemplates that individual states may use the certification to impose ongoing obligations upon a federal licensee.  *See* 33 U.S.C. § 1341(d) ("Any certification provided under this section shall set forth any . . . limitations, and monitoring requirements necessary to assure that any applicant for a Federal license or permit will comply with" certain limitations promulgated by the certifying state under the Act, as well as with "any other appropriate requirement of State law set forth in such certification."); *see also S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 386, 126 S. Ct. 1843 (2006) (explaining why

Page 3 -     BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS
SPH/rh2/7938353-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306

"Congress provided the States with power to enforce 'any other appropriate requirement of State law,' by imposing conditions on federal licenses for activities that may result in a discharge" (citing 33 U.S.C. § 1341(d)); *PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*, 511 U.S. 700, 707, 114 S Ct 1900 (1994) (explaining that states "are responsible for enforcing water quality standards on intrastate waters"; describing those responsibilities as "primary enforcement responsibilities").

For such obligations to be meaningful, they must be enforceable by the state that imposed them, rather than exclusively by the relevant federal licensing agency that incorporates those conditions into the license obtained for the activity at issue. *See* 33 U.S.C. § 1341(d) (providing that, when a certification includes limitations or requirements necessary to assure compliance with state standards, those requirements "shall become a condition on any Federal license or permit subject to the provisions of this section").

The certifying state is responsible for determining compliance with state water quality standards because a federal licensing agency will frequently lack the knowledge or motivation to enforce those certification conditions. *See United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 984 (E.D. Cal. 2004) (noting that "FERC's purpose and expertise is not in the area of forestry, protection of wildlife, other related national resources, or land management").

Maintaining water quality and implementing water quality standards is not part of the primary mission and within the expertise of FERC (the Federal Energy Regulatory Commission), the relevant federal agency here.[1]  By contrast, amici here are the state agencies that promulgate

---

[1] FERC lack of water-quality expertise is the reason that Congress charged the Environmental Protection Agency, rather than FERC, with administration of the Clean Water Act, and that lack of expertise is also the reason that EPA's regulations require FERC, as a licensing and permitting agency, to defer to the EPA's water-quality expertise. *See* 40 C.F.R. § 121.30 ("The Regional Administrator may, and upon request shall, provide licensing and permitting agencies with determinations, definitions and interpretations with respect to the meaning and content of water quality standards where they have been federally approved under section 10 of the Act, and findings with respect to the application of all applicable water quality standards in particular cases and in specific circumstances relative to an activity for which a license or permit is sought.").

Page 4 -    BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON
DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS
SPH/rh2/7938353-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306

water quality standards and issue certifications in their respective states. *See* Or. Admin. R. 340-041-0001 to 340-041-8033 (Oregon Department of Environmental Quality's rules setting water quality standards); Or. Admin. R. 340-048-005 to 340-048-0055 (Oregon Department of Environmental Quality's rules setting forth procedures for issuing certifications under Clean Water Act); Wash. Rev. Code 90.48.260 (establishing the Washington Department of Ecology as the state water pollution control agency for all purposes under the federal clean water act.). Thus, amici are the regulatory bodies with the expertise necessary to ensuring compliance with conditions contained in any Clean Water Act certification. Moreover, 33 U.S.C. § 1341(d) requires FERC to accept and include state-imposed conditions in its licenses even when it disagrees with them. FERC may not always have an affirmative interest in assuring compliance with such obligations. *See, e.g.*, *American Rivers, Inc. v. F.E.R.C.*, 129 F.3d 99, 103 (2d Cir. 1997) (involving FERC's unsuccessful attempt to defend a decision to issue a license without incorporating certain conditions imposed in a state certification).

This court should reject PGE's strained statutory interpretation, which would eliminate a state's authority to enforce the certification obligations that the Clean Water Act allows them to impose to protect water quality within its borders. Analogous circumstances drove the Eastern District of California to reject a similarly illogical rule—one that would have made FERC the exclusive enforcer of conditions that it was required to impose at the request of and for the benefit of the secretaries of various federal agencies:

> An interpretation of the [Federal Power Act, or FPA] to delegate exclusive jurisdiction to enforce license provisions of FERC is directly contradictory to 16 U.S.C. § 797(e)'s express language creating conditioning jurisdiction in the Secretaries of the departments who have licensing authority and the grant of jurisdiction to the district court of the United States to resolve disputes. . . . *The notion that the Secretaries for whom § 797(e) conditions are created could not enforce those conditions in the district courts under 16 U.S.C. 825p would undermine the legislative structure of the FPA.* The FPA makes mandatory the conditions imposed by the Secretaries. 16 U.S.C. § 797(e). *FERC must accept and include such conditions in its licenses even where it disagrees with them. . . . This mandatory requirement cannot logically be reconciled with a finding that only FERC can enforce such conditions, administratively and non-judicially.* The interest in enforcing § 797(e) conditions lies with the Secretary who supervises

Page 5 -    BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON
DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS
SPH/rh2/7938353-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306

the subject lands.  The FPA's mandatory requirement that FERC accept, without modification and despite conflict, the Secretaries' conditions indicates that *FERC's interests may at times be in conflict with the Department of Agriculture's. If 16 U.S.C. § 797(e) is to have effect, Defendant's claims that FERC has exclusive jurisdiction to enforce license terms must be rejected.*

*United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 980–81 (E.D. Cal. 2004) (emphases added).

And for that reason, the Washington Supreme Court was correct to conclude that "Congress left room for the states to supplement the [Federal Power Act's comprehensive scheme of licensing hydropower projects] through the section 401 certification process." *Dep't of Ecology v. Pub. Util. Dist. No. 1 of Jefferson Cty.*, 849 P.2d 646, 655 (1993), *aff'd sub nom. PUD No. 1 of Jefferson Cty. v. Washington Dep't of Ecology*, 511 US 700, 114 S Ct 1900 (1994).  That is, the "comprehensive scheme consisting of both the Clean Water Act and the FPA presupposes rather than precludes the exercise of state authority" because "section 401 of the Act requires states to assure compliance with appropriate state laws." *Id*.

In short, under PGE's proposed rule abrogating authority for the certifying state to enforce under federal law any obligations imposed as a condition of certification, 33 U.S.C. § 1341's certification requirement would be at risk of becoming an empty exercise—amounting to little more than an opportunity for the state to issue recommendations.  Congress intended a much more substantive role for states under Section 401:  "[s]tate certifications under § 401 are essential in the scheme to preserve state authority to address the broad range of pollution." *S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 386, 126 S. Ct. 1843 (2006).  As Senator Muskie explained on the floor when what is now § 401 was first proposed:  "'No polluter will be able to hide behind a Federal license or permit as an excuse for a violation of water quality standard[s].'" *Id*. (quoting 116 Cong. Rec. 8984 (1970)).

**C.    Given the important role of individual states in protecting state water quality, the Clean Water Act provides a mechanism for states to enforce certification conditions.**

Section 401 of the federal Clean Water Act operates in a manner consistent with the purposes of the Act only if it permits state enforcement of certification conditions.  The specific

Page 6 -    BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS
SPH/rh2/7938353-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306

enforcement authority provided by Congress is the citizen-suit provision contained in 33 U.S.C. § 1365.

As a textual matter, 33 U.S.C. § 1365(a) allows a citizen to enforce any violation of an "effluent standard or limitation." Under 33 U.S.C. § 1365(g), a citizen means "a person or persons having an interest which is or may be adversely affected," which includes a state. *See U.S. Dept. of Energy v. Ohio*, 503 U.S. 607, 616, 112 S. Ct. 1627 (1992) ("A State is a 'citizen' under the [Clean Water Act] . . . ."); *see also id.* at 613 n. 5. And under 33 U.S.C. § 1365(f)(5), a "certification under section 1341" is included within the scope of the term "effluent standard or limitation."

The quoted text is unambiguous, requiring no further analysis. But assuming *arguendo* that there is any ambiguity in the text, the foregoing analysis—which recognizes the Clean Water Act's intent to reserve to states a central role in enforcing certification conditions—supports resolving those ambiguities to include citizen suits to enforce certification conditions. For example, PGE argues that 33 U.S.C. § 1365(f)(5)'s reference to a "certification under section 1341" allows only a citizen-suit challenging discharges by a federal licensee who failed to *obtain* a state certification, but not discharges by a federal licensee who fails to *comply* with conditions of an obtained state certification. A non-compliant discharge is legally indistinguishable from a discharge with no certification at all. Put differently, given a state's authority to craft certification conditions, a state may craft a condition such that non-compliance has the effect of voiding the certification. In the view of amici, that is precisely the effect of the conditions in their certifications.

That reading is both logical and practical. It is logical because it does not require concluding that the Clean Water Act excluded a mechanism for enforcement of certification conditions by the regulatory body empowered to impose those conditions as well as the water quality standards on which they are based. And it is practical because it provides the most direct

means to implement an essential element of the Clean Water Act—enforcement of certification conditions.

Consistent with that analysis, the Ninth Circuit has assumed that states may enforce, in a citizen suit, conditions of a certification issued under 33 U.S.C. § 1341.  *See Northwest Environmental Advocates v. City of Portland*, 56 F.3d 979, 988 (9th Cir. 1995).  In *Northwest Environmental Advocates*, the court found citizen-suit jurisdiction under 33 U.S.C. § 1365 for a citizen group seeking to enforce conditions of a state-issued permit under 33 U.S.C. § 1342, or Section 402 of the Clean Water Act.  56 F.3d at 988–90.  To reach that holding, the court drew a parallel between "a state's authority to impose conditions under CWA § 401" and "citizen-suit enforcement of CWA § 402 conditions," and then concluded that "nothing in the language of the Clean Water Act, the legislative history, or the implementing regulations restricts citizens from enforcing the same conditions of a certificate or permit that a State may enforce."  *Id*. at 988. The necessary consequence of that reasoning and conclusion is that states have authority under the Clean Water Act both to *impose* conditions and to *enforce* those conditions through a citizen-suit, whether those conditions pertain to Section 401 certifications or to Section 402 permits.

These are important states' rights preserved by the Clean Water Act.  By enacting comprehensive federal legislation to address water pollution, Congress did not intend to rely upon the various states' laws for enforcement of conditions that ensure compliance with state water quality standards.  This structure would undermine the federal act's goal to protect our nation's waters and could leave such state law enforcement subject to routine preemption challenges.[2]  The Clean Water Act's citizen suit provision allows citizens—including states—to enforce 401 conditions  through its own state process, or by petitioning to FERC, or by seeking a judicial remedy in a citizen suit in federal district court.

---

[2] *See, e.g., Chasm Hydro, Inc. v. New York State Dep't of Envtl. Conservation*, 14 N.Y.3d 27, 32, 923 N.E.2d 1137, 1139–40 (2010) (rejecting power company's claim that state law enforcement is preempted).

Page 8 -    BRIEF OF AMICI OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY AND WASHINGTON DEPARTMENT OF ECOLOGY OPPOSING DEFENDANT'S MOTION TO DISMISS
SPH/rh2/7938353-v5

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306

In sum, the Clean Water Act's purpose and structure is materially inconsistent with any interpretation that restricts states from enforcing certification conditions by way of citizen suit. PGE's attempts to create textual ambiguity on the question—which are amply defeated by plaintiff's arguments—are not enough to compel this court to interpret the Clean Water Act in such a self-defeating way. *California Edison Co.*, 300 F. Supp. 2d at 983–84 ("A statute should not be read to be self-defeating.").  The underlying goal of the CWA and of 401 Certifications is ensuring *ongoing* water quality over the life of a federal license (which, for FERC licenses, can extend for thirty or fifty years), not simply ensuring that a project complies with water quality standards at a single moment in time.  Any statutory interpretation that renders meaningless the paramount role of states to protect water quality within its borders should be rejected outright by this court.

For those reasons, this court should deny PGE's motion to dismiss.

DATED January 25, 2017.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


<u>    *s/Peenesh H. Shah*    </u>
PEENESH H. SHAH #112131
Assistant Attorney General
Trial Attorney
Tel (503) 378-4402
Peenesh.H.Shah@doj.state.or.us
Of Attorneys for Oregon Department of
    Environmental Quality


<u>                              </u>
BOB FERGUSON
Washington State Attorney General
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
Telephone: (360) 753-6200
Attorney for Washington Department of
    Ecology

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 378-4402 / Fax: (503) 378-6306