IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DESCHUTES RIVER ALLIANCE**, an Oregon nonprofit corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>**PORTLAND GENERAL ELECTRIC COMPANY**, an Oregon corporation,<br><br>        Defendant. | Case No. 3:16-cv-1644-SI<br><br>**OPINION AND ORDER** |

J. Douglas Quirke, Oregon Clean Water Action Project, P.O. Box 11501, Eugene, OR 97440; Daniel M. Galpern, Law Office of Daniel M. Galpern, 2495 Hilyard Street, Eugene, OR 97405. Of Attorneys for Plaintiff.

Beth S. Ginsberg and Michael R. Campbell, Stoel Rives LLP, 600 University Street, Suite 3600, Seattle, WA 98101. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Defendant Portland General Electric Company ("PGE") moves to dismiss the Complaint

brought by Plaintiff Deschutes River Alliance on the ground that the Court lacks subject matter

jurisdiction. Oregon Department of Environmental Quality ("DEQ") and Washington

Department of Ecology appear as *amici curiae* ("*Amici*"). The Court denies PGE's motion to

dismiss.

PAGE 1 – OPINION AND ORDER

## STANDARDS

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone*, 373 F.3d at 1039. A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.*

## BACKGROUND

Plaintiff brings this action under the citizen suit provision in section 505 of the Clean Water Act[1] ("CWA" or the "Act"), 33 U.S.C. § 1365(a)(1). Plaintiff alleges that PGE is responsible for past and continuing CWA violations at its Pelton Round Butte Hydroelectric

---

[1] The statute is formally known as the "Federal Water Pollution Control Act," but it is commonly referred to as the "Clean Water Act."

Project (the "Project").[2] The Project consists of three dams and a selective water withdrawal facility, among other associated developments, between river miles 100 and 120 of the Deschutes River. In 2002, the Project underwent relicensing through the Federal Energy Regulatory Commission ("FERC"). As part of that process, DEQ issued a water quality certification ("the Water Quality Certification") for the Project, pursuant to section 401 of the CWA.[3] Each of the requirements specified in the Water Quality Certification is a condition of the FERC license.

Plaintiff alleges that PGE has violated several of the requirements contained in the Water Quality Certification that are designed to ensure that discharges comply with all applicable state water quality standards. Specifically, part of the Water Quality Certification is a Water Quality Management and Monitoring Plan that sets forth "management plans" to ensure compliance with certain water quality standards, including those relating to hydrogen ion concentration (pH), temperature, and dissolved oxygen levels. Plaintiff asserts that PGE has repeatedly violated the Water Quality Certification by failing to operate the Project in accordance with the management plans.

## DISCUSSION

PGE moves to dismiss the lawsuit for lack of subject matter jurisdiction, arguing that the CWA's citizen suit provision does not allow a civil action challenging compliance with *conditions* contained in a water quality certification issued under section 401 of the CWA. PGE contends that only the licensing entity—not citizens, not states, and not the Environmental

---

[2] PGE notes that it co-owns the Project with the Confederated Tribes of the Warm Springs Reservation of Oregon ("CTWS"). According to PGE, CTWS is the sole owner of the Reregulating Dam, which houses a hydroelectric generating unit.

[3] PGE observes that the CTWS Water Control Board also provided FERC with a certification.

Protection Agency ("EPA")—has authority to enforce certification conditions. Instead, asserts

PGE, because any condition that a state includes in a water quality certification is incorporated

into the license or permit, only the licensing entity may enforce permit conditions. Here, the

licensing entity is FERC. Thus, according to PGE, Plaintiff (or a state) may seek relief by

petitioning FERC to enforce the permit conditions. *See* 16 U.S.C. § 823b (Federal Power Act

enforcement mechanism); 18 C.F.R. § 385.206 (describing complaint process that an interested

person may use to obtain action by FERC, including with respect to a Federal Power Act

license). Alternatively, argues PGE, a state may be able to enforce section 401 certification

conditions *under state law*. *See* 33 U.S.C. § 1370 ("nothing in this chapter shall . . . preclude or

deny the right of any State . . . to adopt or enforce" any more stringent standard or limitation

respecting discharges of pollutants); *see, e.g.*, OAR 340-012-0140(2)(a)(G) & (3)(a)(F) (setting

penalties for any violation of a CWA section 401 water quality certification).

## A.  Principles of Statutory Interpretation

Whether Congress has provided Plaintiff with a cause of action is "a straightforward

question of statutory interpretation" to be resolved using "traditional principles of statutory

interpretation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388

(2014). "The purpose of statutory construction is to discern the intent of Congress in enacting a

particular statute." *Robinson*, 586 F.3d at 686. The plain meaning of the statute controls, unless

such a reading would result in unreasonable or impracticable results. *Id.* at 687. In determining

the plain meaning, the Court may look to "the language and design of the statute as a whole." *Id.*

(quoting *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006)). A court should "not [be]

guided by a single sentence or member of a sentence, but look to the provisions of the whole law,

and to its object and policy." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 35 (1990)

(quotation marks omitted; alteration in original). Indeed, "[i]t is a cardinal canon of statutory

construction that statutes should be interpreted harmoniously with their dominant legislative purpose." *Valladolid v. Pac. Operations Offshore, LLP*, 604 F.3d 1126, 1133 (9th Cir. 2010) (quoting *United States v. Gallenardo*, 579 F.3d 1076, 1085 (9th Cir. 2009)); *see also Bob Jones Univ. v. United States*, 461 U.S. 574, 586 (1983) ("It is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute[.]"). If a statute is ambiguous, legislative history may inform congressional intent. *See Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013).

**B. CWA's Purpose and Framework**

Congress enacted the CWA in 1972 to "restore and maintain the chemical, physical and biological integrity of the Nation's waters." 33 U.S.C. §1251(a). Except when in compliance with one of the permitting schemes in the Act, the "discharge of any pollutant by any person" is prohibited. *Id.* § 1311(a) ("Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.").

States have the "primary responsibilities and rights" to "prevent, reduce, and eliminate pollution" and "to plan the development and use (including restoration, preservation, and enhancement) of land and water resources[.]" *Id.* § 1251(b). To that end, the CWA imposes several duties on the states, including adopting water quality standards for the waters within the state, *id.* § 1313(a), and issuing National Pollutant Discharge Elimination System ("NPDES") permits under Section 402 to "point sources" that discharge pollutants. *Id.* § 1342.

Additionally, states ensure compliance with water quality standards under Section 401. That section applies when an applicant seeks a federal license or permit to undertake any activity that might result in any discharge into navigable waters. *Id.* § 1341. Under section 401(a) of the

CWA, the state's "certification" means that "any such discharge will comply with the applicable provisions of sections [301], [302], [303], [306] and [307] of this title." *Id.* § 1341(a)(1). Section 401(d) of the CWA also provides:

> Any certification . . . shall set forth any effluent limitations and other limitations, and monitoring requirements necessary to assure that any applicant . . . will comply with any applicable effluent limitations and other limitations, under section [301 or 302] of this title, standard of performance under section [306] of this title, or prohibition, effluent standard, or pretreatment standard under section [307] of this title, and with any other appropriate requirement of State law set forth in such certification[.]

*Id.* § 1341(d). The certification conditions "shall become a condition on any" federal license. *Id.*

## C. CWA's Citizen Suit Provision

The CWA empowers citizens to bring enforcement actions against any person alleged to be in violation of federal water pollution standards or limitations.

Section 505 of the CWA reads, in relevant part:

> **(a) Authorization; jurisdiction**
>
> Except as provided in subsection (b) of this section [requiring 60 days' notice before bringing suit] and section 1319(g)(6) [describing enforcement actions taken by EPA or the state], any citizen may commence a civil action on his own behalf—
>
>     (1) against any person . . . who is alleged to be in violation of (A) *an effluent standard or limitation* under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]

*Id.* § 1365(a)(1) (emphasis added). Further, "[t]he district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation . . . ." *Id.* § 1365(a).

At least 60 days before bringing a suit, however, the plaintiff must provide notice of the alleged violation to the EPA, the state, and the alleged violator. *Id.* § 1365(a)(1). If either the

EPA or the state brings an enforcement action, the citizen's participation is limited to intervention in that enforcement action; no independent suit may be brought.

Citizen suits "perform an important public function" and "should be handled liberally[.]" *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987) (relying on the following legislative history: "'It is the Committee's intent that enforcement of these control provisions be immediate, that citizens should be unconstrained to bring these actions, and that the courts should not hesitate to consider them.' S. Rep. No. 414, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Admin. News 3746."). "[T]he purpose behind the citizen-suit provision in the CWA is to ensure enforcement of federal environmental requirements irrespective of the actions of state agencies. The CWA plainly and unambiguously confers an opportunity among citizens to sue alleged violators when government agencies fail to act." *Or. State Pub. Interest Grp., Inc. v. Pac. Coast Seafoods Co.*, 341 F. Supp.2d 1170, 1179 (D. Or. 2004) (citing *Ass'n to Protect Hammersley Eld, & Totten Inlets v. Taylor Res., Inc.*, 299 F.3d 1007, 1014 (9th Cir. 2002); *see also Friends of the Earth v. Carey*, 535 F.2d 165, 173 (2d Cir. 1976 (EPA not a necessary party in Clean Air Act citizen suit)).

## D. Interpretation of CWA's Citizen Suit Provision Based on Statutory Text

PGE's assertion that Plaintiff is precluded from bringing this lawsuit hinges on PGE's interpretation of the definition of "effluent standard or limitation" in the CWA's citizen suit provision. Section 505(f) provides a seven-part definition of that phrase. It reads:

> For purposes of this section, the term "effluent standard or limitation under this chapter" means (1) effective July 1, 1973, an unlawful act under subsection (a) of section [301] of this title; (2) an effluent limitation or other limitation under section [301] or [302] of this title; (3) standard of performance under section [306] of this title; (4) prohibition, effluent standard or pretreatment standards under section [307] of this title; (5) *certification under section [401] of this title*; (6) a permit or condition thereof issued under section [402] of this title, which is in effect under this

chapter (including a requirement applicable by reason of section
[313] of this title); or (7) *a* regulation under section [405](d) of this
title.

33 U.S.C. § 1365(f) (emphasis added).

Inserting the definition relevant to this case into the citizen suit provision, PGE construes

section 505 as follows:  "any citizen may commence a civil action on his own behalf . . . against

any person . . . who is alleged to be in *violation of . . . certification* under section [401] of this

title[.]" *Id.* §§ 1365(a)(1) & (f)(5) (emphasis added). "Certification," PGE asserts, is the

document containing the state's certification for a permitted or licensed activity. ECF 7, at 19

(citing *Black's Law Dictionary* (5th ed. 1981) defining "certification" to mean "the formal

assertion in writing of some fact"); *cf id.* (defining "license" as permission to do an act, and

"permit" as a document granting a right to do something). Thus, under its construction of the

citizen suit provision, the "certification" itself has no legal effect under the CWA, other than as a

statement that the proposed activity will not violate the Act. As a result, PGE concludes,

Congress authorized citizen suits to enforce the *requirement* under section 401 of the CWA to

obtain a certification but not to enforce any conditions that are included within any certification.

PGE maintains that any such enforcement authority resides only in the hands of the federal

permitting or licensing entity.

The Court rejects PGE's interpretation, which rewrites the statute. The plain reading of

the citizen suit provision is that it authorizes a citizen to initiate suit against anyone alleged to be

in violation—that is, currently violating—certification under section 401. The definition does not

expressly limit its application to *obtaining* certification. To the contrary, it incorporates the

entirety of section 401 into the definition of effluent standard or limitation. Section 401, in turn,

includes authority for a state to impose conditions and monitoring requirements to assure

compliance with applicable effluent limitations and "any other appropriate requirement of State

PAGE 8 – OPINION AND ORDER

law set forth in such certification[.]" 33 U.S.C. § 1341(d). Given the expansive incorporation of the entirety of section 401 (and not just 401(a) requiring the procurement of a certification), the most natural reading permits citizen suits both to require a facility to obtain a water quality certification *and* to enforce conditions contained in an existing certification.

Resort to dictionary definitions only supports the Court's reading; the word "certification" is defined to include "the act of certifying," as well as "a certified statement" and the "state of being certified." *Merriam-Webster Third New Int'l Dict.* (16th ed. 1971); *Random House Dict. of the English Language* (6th ed. 1973). "Certify," in turn, is defined to mean confirm or attest. *Id.* Thus, read in conjunction with the provisions of section 401, by issuing a certification, the state confirms or attests that the activity is authorized and complies with the applicable provisions of the CWA and any other "appropriate requirement of State law set forth in such certification," so long as specified conditions are met. 33 U.S.C. §§ 1341(a) & (d). These definitions undermine PGE's narrow construction of "certification" as something that cannot authorize or regulate an activity.

The parties disagree over whether the indefinite article "a" is inserted before the word "certification." Regardless, the outcome is the same.[4] As the *Amici* explain, a non-compliant discharge is the same as an uncertified discharge. Both constitute a "violation of . . . certification

---

[4] Plaintiff's construction of the statute is accurate as applied to section 505(f)(5) in isolation. The phrase to be defined is "*an* effluent standard or limitation" and the defined term is "effluent standard or limitation," without the indefinite article "an." Therefore, replacing only the phrase "effluent standard or limitation" with its applicable definition makes the citizen suit provision read: "[A]ny citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of (A) a[] certification under section [401] of this title." 33 U.S.C. § 1365(a)(1) & (f)(5). Most of the remaining definitions for "effluent standard or limitation," however, begin with "a" or "an." So, inserting subsections (f)(1), (2), (6) or (7) into section 505(a)(1) would repeat the indefinite article "a" or "an." *See, e.g.*, 33 U.S.C. § 1365(a)(1) & (f)(2) ("any citizen may commence a civil action . . . against any person . . . who is alleged to be in violation of (A) *an a* regulation under section [405](d) of the title.").

under section [401]" of the CWA. *Id.* §§ 1365(a) & (f)(5). A licensee's failure to comply with conditions the state deems necessary to ensure that "any such discharge will comply with the applicable provisions of sections [301], [302], [303], [306] and [307] of this title," *id.* § 1341(a)(1), results in the licensee being in violation of the state's certification issued under section 401 of the Act.[5] The Court's reading of the statute is supported by the provision giving district courts the jurisdiction "to enforce such an effluent standard or limitation"—here, to enforce such "certification under section [401]" of the Act, not just to enforce the requirement to *obtain* such certification under the Act. *Id.* §§ 1365(a) & (f)(5).

PGE points to the absence of the word "condition" in section 505(f)(5), when it is present in the very next subsection. Specifically, citizen suits are permitted against any person alleged to be in violation of "*a permit or condition thereof* issued under section [402] of this title[.]" *Id.* §§ 1365(a)(1) and (f)(6). From this, PGE concludes, the absence of the word "condition" in the section 401 certification context must mean that a citizen may only bring a lawsuit to require an applicant to obtain the section 401 certification.

Although the Court is cognizant of the need to give meaning to textual differences in the statute, in this instance Congress' use of the words "condition" when allowing suits for violations of NPDES permits and "conditions thereof" under section 402, and its failure to do so when allowing suits for violations of certifications under section 401, does not suggest that Congress intended to preclude citizen suits to enforce water quality certification conditions. As the Court noted above, the definition of "effluent standard or limitation" incorporates the entirety

---

[5] Federal regulations require the certification to contain a statement that "there is a reasonable assurance that the activity will be conducted in a manner which will not violate applicable water quality standards." 40 C.F.R. § 121.2(a)(3). The certification must also contain "[a] statement of any conditions which the certifying agency deems necessary or desirable with respect to the discharge of the activity." 40 C.F.R. § 121.2(a)(4).

of section 401, which includes broad authority for a state to impose conditions to assure

compliance with state law. *Id.* § 1341(d).

Further, as the Supreme Court commented, sections 401 and 402

> are not interchangeable as they serve different purposes and use
> different language to reach them. Section 401 recast pre-existing
> law and was meant to "continu[e] the authority of the State . . . to
> act to deny a permit and thereby prevent a Federal license or
> permit from issuing to a discharge source within such State."
> S.Rep. No. 92-414, p.69 (1971). Its terms have a broad reach,
> requiring state approval any time a federally licensed activity
> "may" result in a discharge ("discharge" of course being without
> any qualifiers here), 33 U.S.C. § 1341(a)(1), and its object
> comprehends maintaining state water quality standards[.]"

*S.D. Warren Co. v. Maine Bd. of Envtl. Prot.*, 547 U.S. 370, 380 (2006); *see also* S. Rep. No. 92-

414 (1971), *as reprinted in* 1972 U.S.C.C.A.N. 3668, 3735 (report summarizes the certification

process under the heading "Title IV-Permits and Licenses" and describes it as "largely taken

from present law"). In short, construing the citizen suit provision to allow enforcement of

certification conditions is supported by the text of the relevant provision and is not undermined

by the different text contained in section 505(f)(6).

**E.  Interpretation of the CWA's Citizen Suit Provision Based on Statutory Context**

**1.  Incorporation of Certification Conditions in the License or Permit**

Looking at the text of section 401, PGE argues that because any certification conditions

must be included in the permit or license, the certification is not a separately enforceable

obligation, but simply a condition to obtaining a federal license or permit. 33 U.S.C.

§§ 1341(a)(1) & (d); *see also* ECF 8, Ginsburg Decl., Ex. B at 1 (the Project's section 401

certification reads, "Upon [FERC] issuance of a new license . . . [PGE and CTWS] shall comply

with the following § 401 conditions"). PGE questions why Congress would require incorporation

of certification conditions in a federal license or permit if the certification conditions are

separately enforceable in a citizen suit.

It is true that any conditions in a section 401 certification are enforceable by the federal

licensing or permitting agency after the conditions are included in the license. But the legislative

history suggests this is not the only reason for the incorporation requirement. Congress appeared

to have been concerned, at least in part, that a Federal licensing or permitting agency might

attempt to ignore state water quality requirements. Specifically,

> In addition, the provision makes clear that any water quality
> requirements established under State law, more stringent than
> those requirements established under this Act, also shall through
> certification become conditions on any Federal license or permit.
> The purpose of the certification mechanism provided in this law is
> to assure that Federal licensing or permitting agencies cannot
> override State water quality requirements.

S. Rep. No. 92-414, *as reprinted in* 1972 U.S.C.C.A.N. at 3735; *see also S.D. Warren Co.*, 547

U.S. at 384 n.8. (commenting "[i]t is still the case that, when a State has issued a certification

covering a discharge that adds no pollutant, no federal agency will be deemed to have authority

under NEPA to 'review' any limitations or the adequacy of the § 401 certification.").

PGE's remaining arguments on this subject are similarly unpersuasive. According to

PGE, a licensing authority may deny a permit or license, despite receiving a section 401

certification. In such a situation, PGE points out, the certification conditions should not be

subject to enforcement because the activity triggering the need for certification in the first place

would not proceed. This argument is unpersuasive. Such certification conditions would not be

enforceable because there would be no "discharge into the navigable waters" from an activity to

trigger application of certification conditions. *See also* ECF 8, Ginsburg Decl., Ex. B at 1 (the

Project's section 401 certification reads, "Upon [FERC] issuance of a new license . . . [PGE and

CTWS] shall comply with the following § 401 conditions").

PAGE 12 – OPINION AND ORDER

Additionally, PGE argues, a state may add or change conditions for certification after the license has been issued, and those conditions do not always appear in the license or permit. If a citizen could challenge those conditions, despite their absence from the license or permit, a permittee or licensee might be subject to inconsistent obligations. The specter of inconsistent obligations is not sufficient to persuade the Court that PGE's construction of the statute is the correct one. Indeed, the case PGE cites for this proposition anticipated the possibility of conflicting state and federal requirements, arising as a result of imposition of certification conditions after the one-year statutory review period had passed, and suggested ways to address such conflicts. *Airport Cmtys. Coal. v. Graves*, 280 F. Supp.2d 1207, 1214-18 (W.D. Wash. 2003) (one suggestion was for the permittee to approach the federal agency "to modify the permit to incorporate any stricter state standards so that the permittee would face a consistent set of requirements."). Other courts have disagreed with *Graves* about the way the annual deadline is measured, thus eliminating the possibility of conflicting obligations altogether. *FPL Energy Maine Hydro LLC v. Dep't of Envtl. Prot.*, 926 A.2d 1197, 1203 (Me. 2007) (court concluded Congress simply intended action on an application within a year and not that appeals needed to be resolved within that timeframe). The fact that Congress imposed an incorporation requirement that is separately enforceable does not indicate that Congress intended to limit enforcement avenues.

### 2.  State and EPA Enforcement Authority

PGE contends that Plaintiff must have no authority to enforce the section 401 certification conditions because neither the EPA nor the states have any such authority. Having withheld authority from EPA and the states, PGE argues, Congress would not have given greater authority to citizens.

Contrary to PGE's reading of the law, however, states do have authority to enforce any violation of an effluent standard or limitation pursuant to the citizen suit provision. The CWA defines a citizen to mean "a person or persons having an interest which is or may be adversely affected," and the CWA defines "person" to include a state. 33 U.S.C. §§ 1365(g), 1362(5); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 616 (1992) ("A State is a 'citizen' under the CWA . . . ."). Thus, if the Court were to accept PGE's definition of "certification," as set forth above, the Court would be finding that a state lacks the authority to enforce the certification conditions that the CWA allows it to impose. Such an interpretation runs contrary to the CWA's purpose and framework. Indeed, the CWA imposes on the states the responsibility to set and assure compliance with state water quality standards. The very entities charged with the authority and responsibility to craft section 401 certification conditions cannot be bereft of the authority to enforce those conditions.

It is true that EPA has no power to enforce section 401. *See* 33 U.S.C. § 1319 (describing EPA enforcement authority for violations of sections 301, 302, 306, 307, 308, 318, and 405, but not 401); 33 U.S.C. § 1319(a)(3) (EPA may also bring a civil action for a "violation of any permit condition or limitation implementing any of such sections in a permit issued under section [402] . . . or . . . in a permit issued under section [404] of this title by a State[.]"). PGE contends Congress could not have intended citizens to have a greater role than the EPA. *See Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 873 (6th Cir. 2016) (suggesting citizens are "backup" to the EPA and states, which are the primary enforcers); *S.F. Baykeeper v. Cargill Salt Div.*, 481 F.3d 700, 706 (9th Cir. 2007) (citizens may sue "when the responsible agencies fail or refuse to do so"); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49,

60-61 (1987) (The CWA citizen suit is "meant to supplement rather than supplant governmental action.").

Congress, however, intended states to take the lead in enforcement actions. *Gwaltney*, 484 U.S. at 60 (commenting "[t]he [Senate] Committee [on Public Works] intends the great volume of enforcement actions [to] be brought by the State[.]"). As the Supreme Court recognized, in the section 401 context, "[c]hanges in the river . . . fall within a State's legitimate legislative business, and the Clean Water Act provides for a system that respects the States' concerns." *S.D. Warren Co.*, 547 U.S. at 386 (citing 33 U.S.C. § 1251(b) (policy of Congress to recognize, preserve, and protect the responsibilities of states); § 1256(a) (federal funds for state efforts to prevent pollution); § 1370 (allowing states to impose stricter standards than federal ones)). In fact, "[s]tate certifications under § 401 are essential in the scheme to preserve state authority to address the broad range of pollution[.]" *Id.*; *see also* 33 U.S.C. § 1370 ("Except as expressly provided in this chapter, nothing in this chapter shall (1) preclude or deny the right of any State . . . to adopt or enforce (A) any standard or limitation respecting discharges of pollutants, or (B) any requirement respecting control or abatement of pollution[.]"). Further, "[t]he CWA directly grants all states § 401certification authority, and currently all states have retained their authority." U.S. EPA Office of Wetlands, Oceans, and Watersheds, *Clean Water Act Section 401 Water Quality Certification: A Water Quality Protection Tool for States and Tribes* at 6 (2010). Given the overwhelming textual support for state authority to create and enforce their own water quality standards, the absence of EPA enforcement authority is not a persuasive reason to accept PGE's interpretation of the CWA—an interpretation that would put all enforcement authority exclusively in the hands of the federal permitting agency.

**F.  Interpretation of CWA's Citizen Suit Provision Based on Case Law**

There is a scarcity of authority on the proper interpretation of the citizen suit provision as applied in this context. The relatively few courts that have permitted citizens to pursue civil actions against persons alleged to be in violation of certification conditions, however, did not question their authority to do so. *Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Kovich*, 820 F. Supp.2d 859, 895, 896-97 (N.D. Ind. 2011) (describing private cause of action as allowing plaintiffs to enforce an effluent standard or limitation, defined to be a certification under section 1341, thereby allowing suit for violations of conditions in the water quality certification issued by the Indiana Department of Environmental Management); *Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Stiglich*, 999 F. Supp.2d 1111, 1125 (N.D. Ind. 2014) (same); *Friends of Merrymeeting Bay v. Hydro Kennebec, LLC*, 759 F.3d 30 (1st Cir. 2014) (not questioning authority of citizens to enforce provisions of the water quality certifications issued by the state of Maine).

The *Amici* rely on *Northwest Environmental Advocates v. City of Portland*, 56 F.3d 979, 988 (9th Cir. 1995), asserting that the Ninth Circuit implicitly accepted the notion that states could both impose and enforce certification conditions. In that case, however, the Ninth Circuit was tasked with interpreting the extent of citizens' authority to enforce NPDES permit conditions, not section 401 certification conditions. It is true that the court drew an analogy between the state's authority to impose conditions under section 401 and a citizen's authority to enforce section 402 conditions, but the court commented only on the state's authority to impose certification conditions for incorporation in a license or permit.

The Ninth Circuit, however, has held that section 505(f)(5) allows citizens to enforce the need to *obtain* a certification before issuance of a federal permit. *Or. Nat. Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1095 (9th Cir. 1998). In fact, the U.S. Forest Service argued the

converse, or flipside, of the contention that PGE urges here—that the statute authorizes *only* suits to enforce discharge limitations contained within already-issued state certifications. The Ninth Circuit rejected that argument and concluded that because the citizen suit provision cross-references the entirety of section 401 and because nothing in the provision limited such a suit to challenges of existing certifications, the CWA allowed the plaintiff's suit. The fact that the U.S. Forest Service could suggest the interpretation urged by Plaintiff here further undermines PGE's insistence that its construction is the only correct one. In any event, failure to follow a certificate is no less a violation than a failure to obtain a certificate in the first place.

The cases that PGE relies on, *Askins*, 809 F.3d at 873, and *Northwest Environmental Defense Center v. U.S. Army Corps of Engineers*, 118 F. Supp.2d 1115 (D. Or. 2000), involved attempts by citizens to enforce sections of the CWA without specific authorization to do so in the citizen suit provision. *Askins*, 809 F.3d at 873 ("The notification requirement at issue here was enacted pursuant to § 1314, which is not enumerated as requiring compliance for purposes of the citizen-suit provision."); *Nw Envt'l Defense Center*, 118 F. Supp.2d at 1118-19 (holding no authority to enforce a section 404 permit). As the Court has concluded, the plain reading of the statute authorizes civil actions against any person "alleged to be in violation of . . . certification" under section 401, which includes the ability to enforce the conditions intrinsic to issuance of the certification itself. Therefore, Plaintiff has the necessary statutory authorization to bring this suit.

## G.  Interpretation of CWA's Citizen Suit Provision Based on Legislative History

Finally, the parties use legislative history to inform their varying interpretations of the statute. Legislative history may be considered if the statute is ambiguous. *See Woods*, 722 F.3d at 1181. Although the Court has concluded the citizen suit provision is unambiguous, it notes, strictly for confirmatory purposes, that the Senate Public Works Committee's report supports the Court's reading of section 505. In that report, the Committee explained:

PAGE 17 – OPINION AND ORDER

> In addition to violations of section 301(a) citizens are granted
> authority to bring enforcement actions for violations of schedules
> or timetables of compliance and effluent limitations under section
> 301, standards of performance under section 306, prohibitions or
> effluent standards and pretreatment standards under section 307,
> *provisions of certification under section 401*, and any condition of
> any permit issued under section 402.

S. Rep. No. 92-414, *as reprinted in* 1972 U.S.C.C.A.N. at 3747 (emphasis added).

Although PGE emphasizes the difference between certification provisions and permit conditions—suggesting "provisions" refers to the section 401 scheme of obtaining a certification for a federally licensed or permitted discharge—Plaintiff's interpretation is just as likely. The Senate's committee report supports a conclusion that citizens may bring suits for "violations of . . . provisions of certification under section 401"—or the terms necessary to comply with the certification—just as one might sue to enforce the provisions of a contract.

## H. Summary

Replacing the phrase "effluent standard or limitation" in the citizen suit provision with its applicable definition means that "[a]ny citizen may commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . certification under section [401] of this title[.]" 33 U.S.C. §§ 1365(a)(1) & (f)(5). The broad incorporation of the entirety of section 401, and not just the section requiring procurement of such certification, means citizens may sue both to require a facility to obtain certification and to enforce conditions in an existing certificate. Indeed, certification includes the conditions the state deems necessary to achieve compliance with the applicable provisions of the CWA in order to give the certification in the first place. The Court's reading of the citizen suit provision is the only construction that is consistent with the text of the statute and the purpose and policy of the CWA, while also upholding a state's authority to enforce its own water quality standards.

**CONCLUSION**

The Court has subject matter jurisdiction over this action and denies PGE's Motion to

Dismiss (ECF 7).

**IT IS SO ORDERED**.

DATED this 27th day of March, 2017.

<u>/s/ *Michael H. Simon*</u>
Michael H. Simon
United States District Judge